UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JESSIE CAPERS, PATRICK NGEI, TARIQ BASKERVILLE, and GITONGA WAIGUCHU,<br><br>**Plaintiffs,**<br><br>v.<br><br>FEDEX GROUND, TYRONE GASKINS, ALBERT RETTINGER, JIM GELHAUSEN, JOE COLLINS, and TOM DIMAIO,<br><br>**Defendants.** | No. 2:02-CV-5352 (WJM)<br><br>OPINION |

**THIS MATTER** comes before the Court on Defendants' motion to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons provided below, the Court **GRANTS** the motion **IN PART** and **DENIES** it **IN PART.**

### I.   Factual and Procedural Background

This case has a long procedural and factual history that the Court need not recite at length to address the pending motion. Plaintiffs Jessie Capers, Patrick Ngei, Tariq Baskerville, and Gitonga Waiguchu are individual contractors who owned and operated trucks and performed delivery services on behalf of Defendant FedEx Ground Package Systems, Inc. ("FXG"). Defendants Tyrone Gaskins, Albeit Rettinger, Jim Gelhausen, Joe Collins, and Tom DiMaio (collectively, the "Individual Defendants"), are or were officers, principals, or other employees of FXG. Plaintiffs allege that from as far back as 1992 and continuing to as late as April of 2002, Defendants engaged in a series of illegal acts against Plaintiffs, including, among other conduct, frustrating Plaintiffs' attempts at advancement, breaching contractual obligations, and otherwise favoring white employees over Plaintiffs, who are black.

Plaintiffs filed their original complaint in New Jersey state court in 2002,

1

and Defendants removed the action to this Court on November 7, 2002. On December 13, 2002, Plaintiffs filed their Amended Complaint. On September 24, 2003, this Court granted in part Defendants' motion to dismiss. Thereafter, the case proceeded with pretrial preparations on the remaining claims. In early 2005, FXG moved to transfer the matter to the United States Judicial Panel on Multidistrict Litigation for pretrial management, and this Court stayed further proceedings. On September 15, 2005, the Judicial Panel ordered the case transferred to the United States District Court for the Northern District of Indiana. At some point after the transfer, Plaintiffs appear to have amended their complaint a second time. On March 7, 2011, after the Northern District of Indiana made its rulings, the Judicial Panel remanded the matter back to this Court. With the consent of the parties and in the wake of those rulings, the Court dismissed Plaintiffs' Second Amended Complaint and granted Plaintiffs leave to make further amendments. Plaintiffs filed the Third Amended Complaint (the "TAC") on September 18, 2011, and Defendants filed this motion to dismiss thereafter.

## II.     Legal Analysis

### A. Motion to Dismiss Standard

In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998). This assumption of truth is inapplicable, however, to legal conclusions couched as factual allegations or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 129 S.Ct. at 1949 (2009).

### B. First Count: Promissory Estoppel

Defendants argue that Plaintiffs' claim for promissory estoppel must fail because the factual allegations are insufficient to support the elements of the claim. Defendants are correct.

In order to state a claim for promissory estoppel under New Jersey law, the plaintiff must plead: (1) that the defendant made a clear and definite promise; (2) with the expectation that the plaintiff would rely upon it; (3) that the plaintiff reasonably relied on the promise; and (4) that the reliance resulted in definite and substantial detriment. *East Orange Bd. of Educ. v. New Jersey School Const. Corp.*, 963 A.2d 865, 875 (N.J. Super. App. Div. 2009).

The allegations of the TAC are insufficient to state a claim for promissory estoppel in several ways. The TAC alleges that Defendants promised Plaintiffs that as individual contractors they would have exclusive control over their routes, vacation times, sick time, lunch breaks, and other details of their performance but that Defendants reneged on those promises and maintained control over all of these aspects of Plaintiffs' work. The TAC also baldly alleges that Defendants made these promises with the expectation that Plaintiffs would rely on them, that Defendants did rely on them, and that that reliance harmed Defendants. These allegations are little more than a recitation of the elements of a claim for promissory estoppel. Other than the allegations regarding the kinds of promises that Defendants made, the TAC does not allege any specific facts supporting the claim. The TAC does not even allege that Plaintiffs' reliance was reasonable – a necessary element of the claim. Plaintiffs' brief in opposition to Defendants' motion explains that Defendants used the promises to induce Plaintiffs to accept their positions with FXG and that Defendants' reliance on those promises injured them because they passed up other employment opportunities. But Plaintiffs' cannot use statements in a brief to fill holes in their pleadings. *See Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988).[1] The Court will dismiss Plaintiffs' claim for promissory estoppel.

### C. Second through Fifth Counts: Negligent Hiring, Supervision, and Retention

Defendants argue that the Court should dismiss Plaintiffs' claims for negligent hiring, supervision, and retention in the Second through Fifth Counts because the TAC does not contain specific factual allegations sufficient to state a

---

[1] Even if the Court could consider such statements, these additional allegations alone would likely be insufficiently specific to state a claim.

claim. Again, Defendants are correct.

New Jersey law recognizes a tort action based on negligent hiring or supervision that is distinct from a claim based on the doctrine of *respondeat superior*. *Hoag v. Brown*, 935 A.2d 1218, 1230 (N.J. Super. A.D. 2007) (citing cases). A cause of action for negligent hiring or supervision imposes liability against an employer where the employee has committed an intentional tort even where that tort occurs outside the scope of employment. *Id.*; *see also Di Cosala v. Kay*, 450 A.2d 508, 515 (N.J. 1982). In order to state a claim for negligent hiring or supervision, the plaintiff must plead that: (1) the employer knew or had reason to know that its employee was unfit, incompetent, or dangerous, and that those qualities created a risk of harm to other persons; and (2) because of the employer's negligent hiring or supervision, the employee's unfitness, incompetence, or dangerous characteristics proximately cause the plaintiff's injuries. *Di Cosala*, 450 A.2d at 516.

The allegations of the TAC in the Second through Fifth Counts are a morass. The Second Count alleges that FXG hired the managers and supervisors and was therefore liable for the actions of those employees. The TAC also alleges that unspecified Defendants allowed unspecified employees to tamper with Plaintiffs' trucks and their contents. The Third Count alleges that Defendant DiMaio intended that those acts be taken against Plaintiffs and their vehicles. It further alleges that DiMaio inflicted injuries against Plaintiffs by refusing to discuss unspecified issues related to their business relationship with FXG. The Fourth Count alleges that FXG hired Defendant DiMaio despite knowing that he had been fired from a position with another company for racial discrimination. The Fifth Count alleges that unspecified Defendants negligently supervised unspecified supervisors and allowed those supervisors to abuse unspecified contractual agreements and professional relationships "in a manner that caused injury." Finally, the TAC also alleges in that Count that unspecified Defendants negligently loaded hazardous materials onto Plaintiffs' trucks and otherwise allowed the creation of a hazardous working environment.

None of the Counts, standing alone, is sufficient to state a claim against any of the Defendants for negligent hiring or supervision. Each Count contains some piece of the necessary allegations, but even taken in sum the Counts are pled in such a way that Defendants cannot possibly be on notice of the claims against them. Other than Defendant DiMaio, the TAC does not even allege which employees committed torts against which Plaintiffs. And the allegations regarding DiMaio are insufficient to explain how, exactly, the negligent hiring or supervision injured Plaintiffs. Plaintiffs' brief in opposition says only that dismissing these claims prior to discovery would be like "putting the cart before the horse." Br. Opp. 7. On the contrary, it is Plaintiffs who ask the Court to put the cart before the

horse – they seek discovery before they meet the notice requirements of Rule 8. As such, the Court will dismiss the Second through Fifth Counts of the TAC for failure to state a claim.

### D. Sixth Count: Negligence

Defendants ask the Court to dismiss Plaintiffs' Sixth Count, for negligence, claiming that Plaintiffs failed to allege any injuries resulting from the negligence. Here, Defendants are wrong.

"To establish a prima facie case of negligence, a plaintiff must establish the following elements: (1) duty of care, (2) breach of that duty, (3) proximate cause, and (4) damages." *D'Alessandro v. Hartzel*, 29 A.3d 1112, 1114 (N.J. Super. App. Div. 2011). A plaintiff may recover in damages for personal injury, property damages, or economic loss resulting from the negligence of another. *See People Exp. Airlines, Inc. v. Consolidated Rail Corp.*, 100 N.J. 246, 251-52 (N.J. 1985).

The TAC adequately alleges facts supporting the element of damages. The TAC alleges that Defendants had a duty to ensure that Plaintiffs' delivery trucks were safe and secure when not in use and further alleges that Defendants breached that duty by allowing individuals to tamper with the trucks and their contents. This tampering allegedly resulted in parts missing from the engines of Plaintiffs' trucks and other hazardous conditions. These allegations are sufficient to support the claim that Defendants' negligence resulted in damage to Plaintiffs' trucks, an injury for which Plaintiffs may recover under New Jersey law should they ultimately prove their claim.[2]

### E. Seventh Count: Civil RICO Claims[3]

Defendants argue that Plaintiffs' civil RICO claims, embodied in the Seventh Count of the TAC, must fail because the factual allegations are inadequate to establish any of the necessary elements. Defendants are correct.

The TAC attempts to allege both a claim for civil RICO under 18 U.S.C. § 1962(c) and a claim for civil RICO conspiracy under 18 U.S.C. § 1962(d). A claim alleging a pattern of racketeering under subsection 1962(c), requires proof of four elements: (1) the existence of an enterprise engaged in or affecting interstate

---

[2] But to the extent Plaintiffs' believe they were harmed in other ways by Defendants' negligence, the allegations are insufficient. Plaintiffs' opposition brief claims that the negligence also resulted in damage to Plaintiffs' reputations and employment because the tampering gave the appearance that the Plaintiffs' were incompetent. The Court does not see where these allegations are clearly made in the TAC or the Sixth Count, and thus, they are not actionable. Plaintiffs may address this deficiency if they amend their pleadings.

[3] On May 30, 2012, Counsel for Defendants submitted an additional letter regarding Plaintiffs' civil RICO claim. The Court did not consider this letter or its contents in deciding the pending motion to dismiss.

commerce; (2) that the defendant was employed by or associated with the enterprise; (3) that the defendant participated, directly or indirectly, in the conduct or the affairs of the enterprise; and (4) that the defendant participated through a pattern of racketeering activity that included at least two racketeering acts. *Annulli v. Panikkar*, 200 F.3d 189, 198 (3d Cir. 1999) *overruled on other grounds by Rotella v. Wood*, 528 U.S. 549 (2000). In order to state a claim for civil RICO conspiracy under subsection 1962(d), a plaintiff must allege the existence of an agreement to commit the predicate RICO acts and knowledge that those acts were part of a pattern of racketeering activity conducted in violation of Section 1962(a), (b), or (c). *Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir. 1989).

   The civil RICO allegations in the TAC are woefully inadequate. Among other failures, the TAC does not adequately allege: that each alleged member committed at least two acts of racketeering activity within ten years of each other, *Trs. of Plumbers and Pipefitters Nat'l Pension Fund v.Transworld Mechanical, Inc.*, 886 F. Supp. 1134, 1144 (S.D.N.Y. 1995) (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229 (1989)); which Defendants were members and which predicate acts they committed, *Shover v . York County Prison*, No. 11-CV-2248, 2012 WL 720858, at *6 (M.D. Pa. Mar. 1, 2012); the relationship between the predicate acts and the continuity of the predicate acts as is necessary to establish a pattern of racketeering activity, *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237-38 (1989); facts sufficient to support a finding that an enterprise existed other than the mere conclusory statement that Defendants conspired with other persons, *In re Insurance Brokerage Antitrust Litig.*, 618 F.3d 300, 370 (3d Cir. 2010) (discussing requirements of pleading association-in-fact enterprise); and facts sufficient to suggest Plaintiffs could prove the elements of the predicate act crimes. *See Kalomiris v. Monroe County Syndicate*, 2009 WL 73785, at *5 (M.D. Pa Jan. 8, 2009) (citing *Warden v. McKelland*, 288 F.3d 105, 114 (3d Cir. 2002)). And even assuming that Plaintiffs' RICO conspiracy claim could survive independent of Plaintiffs' substantive RICO claim, the allegations of the TAC regarding the conspiracy claim are even more threadbare. The TAC fails to allege facts showing that Defendants entered into an agreement to perform at least two predicate acts and also fails to allege facts showing the requisite knowledge. For all of these reasons, the Court will dismiss the Seventh Count of the TAC.

  F. <u>Eighth Count: Invasion of Privacy</u>

   Defendants argue that Plaintiffs' claim for invasion of privacy must fail because Plaintiffs do not establish to whom the private information was disclosed. Defendants further argue that disclosure of the information to the Individual Defendants could not constitute an invasion of privacy because the Individual

Defendants were Plaintiffs' managers and thus were already aware of the information. Defendants' arguments fail.

New Jersey law recognizes four distinct kinds of invasion of privacy claims involving four different privacy interests: (1) intrusion on an individual's seclusion or solitude; (2) public disclosure of private facts; (3) placing an individual in a false light in the public eye; (4) and appropriate of an individual's likeness. *Rumbauskas v. Cantor*, 649 A.2d 853, 856 (N.J. 1994). While Plaintiffs have not attempted to categorize their claim for invasion of privacy according to these four categories, it appears from the TAC that Plaintiffs' claim is for public disclosure of private facts. In order to state a claim for public disclosure of private facts, a plaintiff must establish that private matters were revealed, that dissemination of such facts would be highly offensive to a reasonable person, and that there is no legitimate public interest in the disclosure. *Wilson v. Grant*, 687 A.2d 1009, 1015 (N.J. Super. App. Div. 1996) (quotation omitted).

Omitting both Defendants' and Plaintiffs' attempts to insert additional facts, the allegations of the Eighth Count of the TAC are sufficient to state a claim for invasion of privacy based on public disclosure of private facts. The TAC alleges that Plaintiffs' paychecks were not placed in secured envelopes and were instead posted in unspecified locations that allowed them to be viewed by unspecified third parties who also worked for FXG. While sparse, these allegations are sufficient at the motion to dismiss stage. The allegations satisfy the first element because, generally speaking, the law recognizes that information regarding a private employee's income is a private matter, *see, e.g.*, Restatement (Second) Torts § 652D cmt. b (1977) (identifying income tax returns as example of private information), and the TAC clearly alleges public disclosure. The allegations satisfy the second element as well because in a working environment where income information is private, publication of that information for the purpose of creating a hostile work environment would be highly offensive to a reasonable person. And finally, the allegations satisfy the third element because they do not suggest that there was any public interest in the disclosure.[4] The Court will deny Defendants' motion on this Count.

### G. Ninth, Tenth, and Eleventh Counts: Contract Claims

Defendants characterize the Ninth, Tenth, and Eleventh Counts as breach of

---

[4] As the facts are developed, this claim may fail as a matter of law. For example, while disclosure to a single individual or a small group of individuals might not qualify as public disclosure sufficient to state a claim, *see* Restatement (Second) Torts § 652D cmt. a, the allegations here do not suggest a small or limited disclosure. But accepting the allegations of the TAC as true and drawing all inferences in favor of Plaintiffs, the Court cannot dismiss these claims at this time.

contract claims or claims for breach of the implied covenant of good faith and fair dealing. And Defendants further argue that because the Individual Defendants are not alleged to be signatories to any agreements, these contract-based claims against them must be dismissed. Defendants are correct.

Generally, a party cannot be liable for breach of a contract to which it is not a party, *see Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007) (describing elements of cause of action for breach of contract under New Jersey law), nor can a party be liable for breach of the implied covenants of a contract of which it is not a party. *Wade v. Kessler Institute*, 798 A.2d 1251, 1262 (N.J. 2002) (affirming dismissal of breach of implied covenant claim and holding "[t]o the extent plaintiff contends that a breach of the implied covenant may arise absent an express or implied contract, that contention finds no support in our case law."). Not one of the Ninth, Tenth, or Eleventh Counts indicates the contracts that form the basis for these claims. The only contracts alleged at all in the TAC are those between Plaintiffs and FXG. Thus, to the extent these Counts attempt to state claims against the Individual Defendants for breach of contract or breach of the implied covenant of good faith and fair dealing, they necessarily fail as currently pled.

But the exact nature of the claims in the Ninth and Tenth Counts are unclear. The TAC alleges in the Ninth Count that Defendants retaliated against Plaintiff Ngei for disclosing the Individual Defendants' conduct to FXG's corporate headquarters. The TAC further alleges in that same Count that an unspecified defendant breached express and implied contracts with Plaintiff Ngei. The TAC alleges in the Tenth Count that Defendants tampered with Plaintiff Caper's truck and further retaliated against him by tampering with his truck after he filed the original complaint in this action. Finally, the TAC alleges in the Tenth Count that Plaintiff Caper's contract was terminated by an unspecified individual in violation of the implied covenant of good faith and fair dealing.

To the extent the Ninth and Tenth Counts seek to state claims for breach of contract or breach of implied covenant, they fail against the Individual Defendants for the above reasons. To the extent the Ninth and Tenth Counts seek to state claims for tortious interference or claims for retaliation, Defendants' argument is unavailing because the defendant need not be a party to a contract to state a claim in either case. But these claims must still fail because the TAC does not properly plead a prima facie case for either. *See Victor v. State*, 4 A.3d 126, 141 (N.J. 2010) (describing elements of claim for retaliation under New Jersey law); *Nostrame v. Santiago*, 22 A.3d 20, 24 (N.J. Super. App. Div. 2011) (describing elements of claim for tortious interference). Thus, the Court will dismiss the Ninth and Tenth Counts against the Individual Defendants.

The allegations of the Eleventh Count are much clearer. The TAC alleges in

the Eleventh Count that Defendants breached the implied covenant of good faith and fair dealing as to all the Plaintiffs. Again, because the Individual Defendants are not allegedly part of any contract, the Court must dismiss the Eleventh Count against the Individual Defendants as well.

## II.     Conclusion

The Court will dismiss the First, Second, Third, Fourth, Fifth, and Seventh Counts of the TAC in their entirety without prejudice. The Court will also dismiss the Ninth, Tenth, and Eleventh Counts against the Individual Defendants without prejudice. Finally, the Court will grant Plaintiffs' 30 days in which to amend the TAC to address the issues identified in this opinion. *See Alston v. Parker*, 363 F.3d 229, 236-37 (3d Cir. 2004) ("[E]ven when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile."). In making these amendments, Plaintiffs should bear in mind that in light of how old this case it, the Court is unlikely to grant any further amendment.

An appropriate order follows.

   /s/ William J. Martini        
**WILLIAM J. MARTINI, U.S.D.J.**